

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 17, 2016**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JASON KEIL GAUGER and | § | Case No.:  15-50120-RLJ-7 |
| ANNA MARIE GAUGER, | § | |
| | § | |
| Debtors. | § | |
| _____ | § | _____ |
| WILLIAM T. NEARY, U.S. TRUSTEE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Adversary No. 15-05013 |
| JASON KEIL GAUGER and | § | |
| ANNA MARIE GAUGER, | § | |
| | § | |
|     Defendants. | § | |

RAYMOND WELDON CUDD, JR. and          §    Case No.:  15-50122-RLJ-7
CANDY CAYE CUDD,                      §
                                     §
        Debtors.                     §
_____      §    _____
WILLIAM T. NEARY, U.S. TRUSTEE,      §
        Plaintiff,                   §
                                     §
v.                                   §    Adversary No. 15-05014
                                     §
RAYMOND WELDON CUDD, JR. and          §
CANDY CAYE CUDD,                      §
                                     §
        Defendants.                  §

## <u>MEMORANDUM OPINION AND ORDER</u>

These two adversary proceedings were jointly tried, with trial held March 23, 2016.

William T. Neary, the United States Trustee (UST) and the plaintiff here, seeks to deny the

bankruptcy discharges of the defendants, Jason and Anna Gauger and Raymond and Candy Cudd;

or, alternatively, dismissal of their respective chapter 7 bankruptcy cases.  The Gaugers and Cudds

deny these charges and request that they each be granted a discharge.  Upon the pleadings,

evidence, and arguments, the Court denies both the UST's objections to discharge and requests for

dismissal.  Each of the Gaugers and Cudds will be granted discharges.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J).

*Background*

The Gaugers and Cudds filed these chapter 7 cases at the same time, using the same counsel,

and for principally the same reason—their inability to service operating loans made by their major

lenders for their joint farming operations.  As a result, they share many of the same liabilities and,

of significance here, are likewise accused of the same conduct complained of by the UST that

underlies the causes here.

The UST accuses the Gaugers/Cudds of purposely omitting certain items and misstating others in their bankruptcy schedules and Statements of Financial Affairs.  They should therefore each be denied a discharge under § 727(a)(4) of the Bankruptcy Code for having made false oaths in connection with their bankruptcy cases, the UST asserts.  The UST alternatively argues that the misstatements and omissions, considered in context, evidence the Gaugers' and Cudds' bad faith in filing their bankruptcy cases, warranting dismissal under § 707(a) of the Code.  The Gaugers/Cudds dispute these charges, submitting that they may have made mistakes in preparing their bankruptcy schedules and Statements but that such mistakes were corrected, and, regardless, were innocently made and without any intent to deceive creditors.  They also point out that they fully cooperated with both the case trustee and the UST and have been forthcoming with all information and documents requested.  When considered in context, they contend that their mistakes warrant neither denial of discharge nor dismissal.

## I.

The affairs of the Gaugers and Cudds are a bit more complicated than the typical chapter 7 debtor.  The Gaugers and Cudds conducted farming operations together for many years.  From 1997–2012, they farmed under the general partnership C&G Farms.  C&G was forced to halt its operations when its principal lender, Commercial State Bank in Seminole, called its note and forced the liquidation of C&G Farms' assets that secured the note.  As part of liquidating assets, the Gaugers/Cudds arranged the sale of the farming equipment to an individual, Rusty Andrews (apparently doing business as Battlecreek Farms), with the bulk of the proceeds, $444,050, paid over to the bank to satisfy its debt.  Gaugers' Exs. 27 and 28.  The bill of sale was dated April 30, 2012.  Gaugers' Ex. 27.  The Gaugers/Cudds then resumed farming under another partnership, 2 Family Farms, which had been formed in 2009.  Their operations under 2 Family Farms were identical to C&G Farms'; they used the same equipment and farmed the same land as did C&G

Farms. They explained that Andrews leased the equipment back to them. Jason Gauger testified that 2 Family Farms later "morphed" into a limited liability company, 2 Family Farms, L.L.C. UST's Ex. 12 at 10.

In addition to C&G Farms and the 2 Family Farms entities, the Gaugers/Cudds also each owned a 50% interest in a general partnership, C&G Land. The Schedules for both the Gaugers and Cudds reflect that none of these entities have any value. To support this, the Schedules list the various assets and liabilities (which far exceed the value of assets) of the entities.[1]

## A.

The UST raises three factual bases for its discharge objections: first, that the Gaugers/Cudds failed to disclose significant amounts of income as required by item 1 of the Statement of Financial Affairs; second, that they failed to disclose several items of farm equipment in their Schedules that they jointly held an interest in; and third, that they failed to adequately disclose the disposition of proceeds received on the sales of assets made within two years of their bankruptcy filings.

Section 727(a)(4)(A) of the Bankruptcy Code denies debtors a discharge if they "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." In this circuit,

> [t]o prevail on a claim under this subsection, an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence "that (1) the debtor made a ... statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case."

*Judgment Factors, LLC v. Packer (In re Packer)*, 816 F.3d 87, 94 (5th Cir. 2016) (quoting *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)). The omission of an asset can qualify as a false oath. *The Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005). On its own, however, omissions or mistakes are not enough to demonstrate fraudulent intent. *Neary*

---

[1] In addition, the Gaugers' Schedules reflect that they owned a one-third interest in an entity, FGH Associates, LLC, which interest is likewise of no value.

*v. Harding (In re Harding)*, No. 14-03078, 2015 WL 222482, at *5 (Bankr. N.D. Tex. Jan. 14, 2015) ("[M]istakes by themselves do not equal fraudulent intent meriting denial of discharge."); *The Cadle Co. v. Preston-Guenther (In re Guenther)*, 333 B.R. 759, 767–68 (Bankr. N.D. Tex. 2005) (stating that it "may be close to impossible to produce Schedules and [Statements of Financial Affairs] that contain no mistaken information, and bankruptcy papers with mistakes are not, alone, enough to bar a debtor's discharge").  Fraudulent intent requires the cumulative effect of false statements, taken with sufficient circumstantial evidence, to evidence an actual intent to deceive or a reckless disregard for the truth.  *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 383 (5th Cir. 2001).  Here, the burden is on the UST to prove such intent by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 286 (1991); *see also Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).

## 1.

The first item on the Statement of Financial Affairs requires that a debtor state the "gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced."  Such information is also required for the two years immediately preceding the calendar year the bankruptcy case was filed.

The meaning of income for the Statement of Financial Affairs should be broadly construed. As has been stated, it is

> consistent with the legal definition of "income" as receipts "from employment, business, investments, royalties, gifts, and the like." *See* BLACK'S LAW DICTIONARY 831 ... . The definition of income does not include the corpus of assets and investments, however, but only the interest or profit realized on the principal value of such items. *Zahn v. Fink (In re Zahn)*, 391 B.R. 840, 845 (B.A.P. 8th Cir. 2008).

*Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 360 (Bankr. N.D. Tex. 2010).

In their original Statement of Financial Affairs filed on May 28, 2015, the Gaugers listed "*Debtor's* gross income from wage employment" for 2015 of $20,838.25, with such debtor having no gross income from wage employment for years 2013 and 2014. Case No. 15-50120, Doc. No. 1 at 8 (emphasis added). It reflects the "*Joint Debtor's* gross income" for 2015 of $11,880.00, for 2014 of $35,763.00, and for 2013 of $34,758.00. *Id*. (emphasis added). It further reflects "Gross income *from* 2 Family Farms" for 2013 of $2,048,170.00, and also from 2 Family Farms for 2014 of $882,094.00. *Id*. (emphasis added). It reflects that the debtors did not receive any gross income in 2015 from 2 Family Farms. It then reflects their "Gross income from 2 Family Farms, LLC" in 2014 of $867,575.00 and in 2015 of $20,400.00.

The Statement of Financial Affairs was amended on August 26, 2015. Case No. 15-50120, Doc. No. 23. Item 1 includes the same information contained in the original Statement, but with some clarifications. It notes that the $20,838.25 of gross income from wage employment for 2015 was the "Husband's gross income" and that the remaining amounts of gross income for wage employment were derived by Anna Gauger. It clarifies concerning the gross income from 2 Family Farms for 2013 and 2014 that the debtors owned a 50% interest in such entity. It makes the same clarification with respect to the gross income of 2 Family Farms, LLC. It is important to note, moreover, that the amended Statement reflects the gross income amounts from 2 Family Farms, both the partnership and the LLC, as gross income *of* such entities as opposed to gross income *from* such entities.

Significantly, the amended Statement reflects additional income. It lists cash distributions from 2 Family Farms in 2014 of $139,395.00, and in 2013 of $309,132.00; and from 2 Family Farms, LLC in 2014 of $23,013.00. It reflects cash distributions received from All Star Peanuts, LLC in 2014 of $41,350.00, and in 2013 of $21,350.00. It further reflects "Gross Farming Income from All Star Peanuts, LLC" in 2014 of $45,000.00, and in 2013 of $44,256.00. Finally,

concerning All Star Peanuts, LLC, it reflects "Passive Taxable Income" in 2014 of $88,067.00, and in 2013 of $30,275.00. One other new item is a listing for real estate rent received in 2014 of $5,100.00. Apart from minor clarifications, the new information set forth on the amended Statement at item 1 concerns the "Cash distributions received *from* 2 Family Farms" and 2 Family Farms, LLC as well as the other sources and types of income received from All Star Peanuts, LLC for the filing year and the two years prior. *Id*. (emphasis added).

The Gaugers included additional information at item 2 in their amended Statement of Financial Affairs. This item concerns income derived from sources other than from employment or operation of a business. Here, they added $25,000 received from sale of a trailer house at Possum Kingdom Lake and $30,000 received from sale of 200 shares of All Star Peanuts, LLC. Both transactions took place in 2015. They designate that the transactions are described at item 10 of the Statement of Financial Affairs. Item 10 concerns transfers made outside the ordinary course of business within two years of the filing of the case. In both the original Statement and the amended Statement, the Gaugers properly listed the two sales, i.e., the sale of the trailer house at Possum Kingdom Lake for $25,000 and the sale of the 200 shares of All Star Peanuts, LLC.

Both the original Statement of Financial Affairs and the amended Statement filed by the Cudds are, with minor exceptions, essentially the same as the Gaugers'.[2]

---

[2] In their original Statement of Financial Affairs filed on May 29, 2015, the Cudds listed "Debtor's gross income from wage employment" for 2015 of $31,057.66, with such debtor having no gross income from wage employment for 2013 and 2014. Case No. 15-50122, Doc. No. 1 at 8. It reflects the "Joint Debtor's gross income" for 2015 of $10,395.00, for 2014 of $24,325.00, and for 2013 of $18,762.00. It further reflects gross income from 2 Family Farms for 2013 of $2,048,170.00, and for 2014 of $882,094.00. It reflects that the Cudds did not receive any gross income in 2015 from 2 Family Farms. And their gross income from 2 Family Farms, LLC was $867,575.00 in 2014 and $20,400.00 in 2013.

Item 1 of their amended Statement notes that the $31,057.66 of gross income from wage employment for 2015 was the "Husband's gross income" and that the remaining amounts of gross income for wage employment were derived by Candy Cudd. Case No. 15-50122, Doc. No. 23. It clarifies that they owned a 50% interest in 2 Family Farms and provides the same clarification with respect to 2 Family Farms, LLC. The amended Statement reflects the gross income amounts from 2 Family Farms, both the partnership and the LLC, as gross income *of* such entities as opposed to gross income *from* such entities.

There is no dispute that the original disclosures at item 1 were insufficient. The Gaugers and Cudds failed in their original Statements of Financial Affairs to include their income from All Star Peanuts. To compound this failure, their responses to item 1 created confusion. The amounts of "income" related to the 2 Family Farms partnership and its "morphed"-into limited liability version are large—over $2 million for 2013 (for the partnership) and over $1.7 million in 2014 (from the partnership version *and* the LLC). These were actually gross income amounts taken from tax returns filed by the entities, not by the Gaugers and Cudds.

The exchange of questions and answers from the creditors meeting held on July 30, 2015, in which the panel trustee, Max Tarbox, and the representative from the U.S. Trustee's office, Mary Fran Durham, sought clarification of the Gaugers' sources of income and of their various related entities, reads like an Abbott and Costello routine. Both sides were confused at times; the meeting provided more frustration and suspicions than clarity. At one point, a debate ensued among counsel regarding the meaning of income for purposes of item 1.

The Gaugers and Cudds obviously opted to include the largest numbers they had, and now assert that such amounts incorporate the distributions they each received from the 2 Family Farms entities. And if the 2 Family Farms' gross income amounts were removed from the amended Statements, thus leaving just the distributions to the Gaugers and Cudds *from* 2 Family Farms (both

---

The amended Statement reflects additional sources of income. It lists cash distributions from 2 Family Farms in 2014 of $139,395.00, and in 2013 of $309,132.00; and from 2 Family Farms, LLC in 2014 of $23,013.00, and in 2013 of $20.00. It reflects cash distributions received from All Star Peanuts, LLC in 2014 of $41,350.00, and in 2013 of $21,350.00. It further reflects "Gross Farming Income from All Star Peanuts, LLC" in 2014 of $48,812.00, and in 2013 of $61,899.00. Concerning All Star Peanuts, LLC, it reflects "Passive Taxable Income" in 2014 of $88,067.00, and in 2013 of $30,275.00. One other new item is a listing of cash distributions from HLC Farms in 2013 of $45,000.00. The Cudds had additional information at item 2 in their amended Statement of Financial Affairs. Here, they added $30,000 received from the sale of 200 shares of All Star Peanuts, LLC, $13,259 received from the sale of a ½ interest in a 3.91-acre tract of land, and $10,000 received from the sale of a 1/3 interest in HLC Farms. All three transactions took place in 2015. It also indicates that the transactions are further described at item 10 of the Statement of Financial Affairs. Item 10 concerns transfers made by the debtor outside the ordinary course of business within two years of the filing of the case. In both the original Statement and the amended Statement, the Cudds properly listed the sales, i.e., the sales of the 200 shares of All Star Peanuts, LLC, their interest in the tract of land, and their interest in HLC Farms.

the partnership and the LLC), their stated income amounts on the original Statements of Financial

Affairs would well exceed the stated income actually received by the Gaugers and Cudds

individually by over $1.4 million. The amended Statements of Financial Affairs, whether helpful or

not, at least identify the sources of income to the Gaugers and Cudds and that the large gross

income amounts are attributable to the 2 Family Farms entities.

The Schedules and Statements of Financial Affairs for each of the Gaugers and Cudds, as

amended, do not, from the evidence presented, give rise to a false oath claim under § 727(a)(4) of

the Code. The issue then is whether the amended Schedules and Statements of Financial Affairs

save the original Schedules and Statements of Financial Affairs from this charge, in particular the

false statements of income at item 1 of the Statements of Financial Affairs. They are technically

false because they omit the income from All Star Peanuts. This is not disputed; such information is

material. But were such omissions made with fraudulent intent? Were the Gaugers and Cudds

trying to hide and conceal such income from creditors? On this point, the evidence reveals no such

motive. The questions and answers at the creditors meeting were confusing, but, at least on this

point, the testimony reveals that Mr. Gauger openly disclosed that he had received income of some

sort from All Star Peanuts. When asked by the trustee if he had received any income *other than*

from wages in the last three years, Gauger clarified that he had indeed been paid by All Star

Peanuts. The trustee then informed counsel for the Gaugers/Cudds that the income from All Star

Peanuts needed to be fully disclosed at item 1 of the Statements of Financial Affairs. As stated, this

was corrected in the amended Statements of Financial Affairs.

A discharge should be granted, despite mistakes, where the debtor is forthcoming and

cooperative in the bankruptcy process. *Judgment Factors, LLC v. Packer (In re Packer)*, 816 F.3d

87, 94–95 (5th Cir. 2016). Debtors should take great care in providing accurate information in their

bankruptcy schedules. *See In re Crumley*, 428 B.R. at 371. Courts do not, however, lightly

entertain a request for the denial of discharge given the severity of the consequences. *Neary v. Russell (In re Russell)*, No. 13-03249, 2014 WL 6982574, at *5 (Bankr. N.D. Tex. Dec. 9, 2014). The Gaugers/Cudds' failure to include the income from All Star Peanuts was done without fraudulent intent.

## 2.

The UST's charge that the Gaugers/Cudds omitted valuable equipment from their Schedules stems from their continued inclusion of such items on tax depreciation worksheets for C&G Farms in 2012 and for the 2 Family Farms partnership in 2013 and 2014. But the bulk of the equipment was sold in late April 2012; the Gaugers/Cudds provided the bill of sale as evidence of this. The equipment was then leased back from the purchaser, Rusty Andrews. Despite this, and to compound the confusion concerning their ownership of the equipment, they (or, really, 2 Family Farms) benefitted from depreciation deductions claimed by 2 Family Farms *after* the equipment was sold and for a tax year in which neither the Gaugers (or Cudds) nor 2 Family Farms owned the equipment.

In addition, Jason Gauger testified that two peanut diggers and a dumb cart were repossessed in 2013, and thus all that remain are three tractors and a square baler. Two "guidance systems" also remain, but those are affixed to the tractors. The three tractors and the baler are listed on the original Schedule B for each of the Gaugers and the Cudds. Gaugers' Ex. 29; Cudds' Ex. 28.

The UST questioned why the Gaugers and Cudds still took depreciation on their tax returns for assets they no longer owned. Depreciation for the digger and dumb carts stopped in 2013 (the year of repossession). However, the 2 Family Farms partnership continued to depreciate the 1/4-mile irrigation system through 2014. Gaugers' Ex. 10. Their accountant, Donna Sellers, testified that she believed the equipment was still in their possession. She also testified that she does not send this depreciation worksheet to the IRS with the rest of the return; it was made primarily for her

benefit.  She said that fully depreciated items often remain on the worksheet—whether still owned or not—as a matter of convenience.  During cross-examination, she testified that if she had known the Gaugers and Cudds sold these items, she would not have depreciated them and would have taken them off the worksheet.  She has not been asked to amend these returns.

The Gaugers and Cudds may have improperly taken depreciation deductions on tax returns, but they have adequately accounted for the equipment that they each owned an interest in at the time they filed their respective bankruptcies.  Such explanation is consistent with Schedule B of their bankruptcy schedules.  They did not make a false statement, and thus did not make a false oath concerning the equipment.

**3.**

The third area in which the UST has alleged that the Gaugers and Cudds falsely reported items in the Schedules concerns their disposition of proceeds from the sale of their respective interests in All Star Peanuts, and, as to the Gaugers, the Gaugers' use of the funds from their sale of a trailer house at Possum Kingdom Lake.  The evidence simply does not support these charges, however.  The Statements of Financial Affairs, at item 10, properly disclose these transfers and the use of the received proceeds.  Such evidence, particularly the use of the proceeds, at most colors the perception of the Gaugers and Cudds as debtors in bankruptcy; it does not constitute false or misleading information.

**B.**

As an alternative to denying the Gaugers and Cudds a discharge, the UST seeks dismissal of their cases under § 707(a) of the Bankruptcy Code as having been filed in bad faith.  To support this charge, the UST refers to the same allegedly false statements that ostensibly support the § 727 actions (including the "unknown disposition of $40,000 just prior to filing") and the "unnecessary

purchase of expensive vehicles just prior to filing." *Joint Pre-trial Order* [Adv. No. 15-05013, Doc. No. 18] at 2.

Section 707(a) of the Bankruptcy Code provides that the bankruptcy court may dismiss a case "only after notice and a hearing and only for cause." A debtor's bad faith may be "cause" justifying dismissal. *See Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 373 (5th Cir. 2016). In assessing whether a debtor has filed a case in bad faith, the court should consider the facts and circumstances surrounding the filing. Bad faith encompasses "conduct designed to manipulate the proceedings" to the debtor's own needs, "including false filings, false testimony, and witness intimidation." *Id*. at 375. A bankruptcy case should not be filed for an illegitimate purpose, coupled with duplicitous and dishonest acts by the debtor prior to filing the case. Candid, honest, and accurate representations are required of any debtor that seeks protection of the bankruptcy laws. *See id.* (denying discharge where debtor "engaged in conduct designed to manipulate the proceedings to his own ends, including false filings, false testimony, and witness intimidation").

The allegedly false statements and disposition of the $40,000 are addressed above in connection with the § 727 cause. And, as also addressed above, the Gaugers and Cudds made some mistakes in failing to disclose certain matters on their Statements of Financial Affairs, particularly their sources of income, but such failures were not purposely misleading or reckless. They likewise do not rise to the level of bad faith required by § 707(a). *See Krueger*, 812 F.3d at 375.

## II.

Here, despite the initial omissions of income and general confusion at the § 341 creditors meeting, the Gaugers and Cudds have been forthcoming and cooperative in their respective bankruptcy cases. They timely provided documents requested by the UST. They furnished copies of bank statements, tax returns, insurance policies, loan applications, and other backup information. They also provided the bill of sale for the so-called missing farm equipment, along with the consent

letter from the lienholder-bank regarding the sale.  And then, on August 26, 2015, they filed their amended Statements of Financial Affairs that added the income amounts received from All Star Peanuts.  The Court cannot conclude, by a preponderance of the evidence, that the Gaugers and Cudds filed their bankruptcy cases in bad faith or had an actual intent to deceive or a reckless indifference to the truth in connection with their Schedules and Statements of Financial Affairs.

### End of Memorandum Opinion and Order ###